**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Badejoko Olojo, | ) | |
|            Plaintiff, | ) | |
| | ) | |
|          v. | ) | No. 05 C 6234 |
| | ) | |
| Kennedy-King College & Kina Montgomery, | ) | |
| | ) | |
|          Defendants. | ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

      Plaintiff Badejoko Olojo filed a nine count complaint against defendant Kennedy-King College and Kina Montgomery alleging 1) religious discrimination in violation of the First Amendment of the Constitution, Title VII, and the Illinois Human Rights Act; 2) pregnancy discrimination in violation of the Fourteenth Amendment to the Constitution, the Pregnancy Discrimination Act, the Rehabilitation Act, the Americans with Disabilities Act, and the Illinois Human Rights Act; 3) retaliation for the free exercise of religion and plaintiff's pregnancy; and 4) state law claims of negligence and intentional infliction of emotional distress due to religious and pregnancy discrimination. Presently before us is Kennedy-King College's ("Defendant") motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below we grant the motion and dismiss the complaint.

## STANDARD OF REVIEW

      "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir.1989)). A complaint is

not required to allege all, or any, of the facts entailed by the claim. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *see also McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000) (holding that plaintiff can plead conclusions if they put defendant on notice of claims). However, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint. *Lekas,* 405 F.3d at 613-614.

In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Gibson,* 910 F.2d at 1520-21. Dismissal is warranted only if the plaintiff can prove no set of facts in support of his claims that would entitle her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). However, we need not "strain to find inferences favorable to the plaintiff[] which are not apparent on the face of the complaint." *Coates v. Illinois State Bd. of Ed.,* 559 F.2d 445, 447 (7th Cir. 1977). Moreover, "[b]ecause the complaint before us was filed by [Olojo's] attorney, it is not entitled to the more charitable review afforded complaints of *pro se* litigants." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734 (7th Cir. 1994).

## BACKGROUND

Olojo enrolled in Kennedy-King College's nursing school as a full time student beginning in the fall of 2002. (Compl. ¶ 1.) Olojo was a student in Ms. Montgomery's Advance Medical Surgery (Nursing 213) course, which involved clinical rotations. (*Id.* ¶¶ 13, 17.) During class one day, Ms. Montgomery asked Olojo where she would be in ten weeks to which Olojo replied, "in Jesus name, I must have [sic] graduated and passed my [Health Education System Inc. ("HESI")] review." (*Id.* ¶ 17.) According to plaintiff, Ms. Montgomery became enraged and "warned [her] not to ever mention the name of Jesus" in their conversations. (*Id.* ¶

2

18.)  Olojo apologized, explaining that she referenced Jesus because of her religious beliefs.  (*Id.* ¶ 19.)  Ms. Montgomery then said, "let's see how Jesus will deliver you from repeating this class."  (*Id.*)

One week later, Olojo was late to her clinical rotation in Advanced Medical Surgery due to a flat tire.  (*Id.* ¶ 21.)  Upon her arrival, Ms. Montgomery "started yelling and nagging" at her.  (*Id.* ¶ 22.)  Then, Ms. Montgomery "looked at [Olojo's] hand and asked [her] why [her] palms were whitish."  (*Id.* ¶ 23.)  In response, Olojo informed her teacher that she was pregnant.  (*Id.*)  Ms. Montgomery was allegedly upset to learn that her student was pregnant and asked Olojo "why she would choose to be pregnant at this time of [her] life...[and] whether she liked her husband and whether she would like to use contraceptive to terminate the pregnancy."  (*Id.* ¶ 24.)  Olojo informed her professor that as a Christian she could not terminate her pregnancy.  (*Id.* ¶ 25.)  Ms. Montgomery then "ordered" Olojo to sign a non-exemption form, consenting to participate in and be exposed to the same demands as her non-pregnant peers.  (*Id.*)

Olojo needed to attain a 78% on her final exam to meet the graduation requirements, but she only earned 76.6%.  (*Id.* ¶¶ 26-27.)  Ms. Montgomery proposed that Olojo (and two other students whose grades were deficient) teach Nursing 101 students in exchange for extra points in the clinical so that she could graduate.  (*Id.* ¶ 30.)  Olojo and two of her classmates conducted orientation on nursing skills for the Nursing 101 students, but, unlike her peers, Olojo did not receive the extra points.  (*Id.*  ¶¶ 32, 33.)  Ms. Montgomery explained that she "could do whatever she like[d] and that her decision was final and unquestionable."  (*Id.* ¶ 33.)  Olojo did not graduate with the rest of her class; she was required to repeat Advanced Nursing Surgery in order to graduate.  (*Id.* ¶¶ 41, 45.)

On April 20, 2004, Olojo received a letter from the City Colleges of Chicago inviting her to attend the HESI Review and the Mandatory Nursing Comprehensive Review for graduating students. (*Id.* ¶ 36.) Kennedy-King College evidently sent Olojo's name to the City Colleges of Chicago along with the graduating students. (*Id.* ¶ 34.) When Olojo arrived at Harry S. Truman College to attend the HESI Review, Ms. Montgomery prevented her from entering and said that she wouldn't admit Olojo "whether or not [she] beg [sic] her in the name of Jesus." (*Id.* ¶ 39.)

Olojo reported Ms. Montgomery's actions to Kennedy-King College, but they failed to take any action. (*Id.* ¶ 43.) On October 28, 2005, Olojo filed a seven count complaint against Kennedy-King College and Ms. Montgomery alleging religious discrimination, pregnancy discrimination, retaliation, and state law claims of negligence and intentional infliction of emotional distress. Kennedy-King College now moves to dismiss the complaint for failure to state a claim.

## ANALYSIS

### A. Title VII Claims

In Count I, II, and III of the complaint, Olojo claims that her nursing school violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq,* by discriminating against her on the basis of her religious beliefs and practices and her pregnancy, and that the nursing school retaliated against her based on her religion and pregnancy.[1] Title VII, entitled "Equal **Employment Opportunities**[,]" protects **employees** from discrimination in the workplace. *Id.* (emphasis added). Plaintiff, however, does not allege that she was defendant's employee. In fact, she admits in the first paragraph of her complaint that she was merely "a full

---

[1] The Pregnancy Discrimination Act is an amendment to and incorporated within Title VII. 42 U.S.C. § 2000(e)(k); *see also Wauconda Healthcare & Rehab. Ctr., LLC,* No. 04 C 3341, 2005 WL 1243394, at *2 (N.D. Ill. May 23, 2005).

time-student." (Compl. ¶ 1.)  Therefore, Olojo does not fall within the scope of Title VII and

thus could not prove a *prima facie* case of discrimination or retaliation.[2]  *See Small v. Chao,* 398

F.3d 894, 898 (7th Cir. 2005) (affirming dismissal of Title VII claim where plaintiff "did not,

and could not, allege an employment or prospective employment relationship[.]"); *Brewer v. Bd.*

*of Trustees of the Univ. of Illinois,* 407 F. Supp. 2d 946, 977-79 (C.D. Ill. 2005).  Further, Olojo

does not allege that she filed a discrimination or retaliation charge with the EEOC, nor does she

allege that she received a right to sue letter from the EEOC, which are both pre-requisites to

filing a claim under Title VII.  A plain reading of the statute would have revealed the absence of

any basis in fact or law for a claim under Title VII.

### B.       Claims based on the Illinois Human Rights Act ("IHRA")

Similarly, Olojo cannot state an IHRA claim.  "[I]n order to seek redress under state law

for sexual harassment and discrimination, a complainant must proceed under the IHRA.  More

importantly, a complainant must exhaust administrative remedies under that Act, then seek

review of the administrative decision in state court." *Kosiarek v. Vill. of Villa Park,* No. 86 C

1502, 1987 WL 14118, *3 (N.D. Ill. Sept. 30, 1987).  Interpreting the IHRA, federal and state

courts in Illinois consistently rule that "[c]ourts have no jurisdiction to hear independent actions

for civil rights violations." *Mein v. Masonite Corp.*, 109 Ill.2d 1, 6, 485 N.E.2d 312, 314 (Ill.

1985); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 458 (7th Cir. 1994)  ("Judicial review is []

available under the IHRA only after the Human Rights Commission has issued a final order on a

complaint."); *McCraven v. City of Chicago*, 18 F. Supp. 2d 877, 882 (N.D. Ill. 1998) ("Under

---

[2] Plaintiff did not respond to defendant's argument on this point, nor did she suggest any basis under which she could seek relief under Title VII.

Illinois law, the Illinois Human Rights Commission ("IHRC") has exclusive authority over claims arising under the IHRA.").

Olojo does not contend that she filed a charge with the Illinois Human Rights Commission or that she exhausted her administrative remedies under the IHRA. Rather, plaintiff argues that "non-conforming [sic] with state exhaustion requirement not [sic] be the basis for ousting the jurisdiction of this Court ... This Court has subject matter jurisdiction to adjudicate ancillary state (IHRA) claims that are technically and jurisdictionally defective[.]" (Resp. to Mot. for Summ. J. at 5.) "A reasonable inquiry into Illinois law would have revealed that the [IHRA] claim could not stand[]" without exhausting the statutorily proscribed administrative remedies. *Flaherty,* 31 F.3d at 459; *see also McCraven,* 18 F. Supp. 2d at 882 ("Since McCraven never brought his IHRA claim to the IHRC, this [sic] claims must be dismissed for failure to exhaust his administrative remedies."). Since Olojo cannot state a claim under either Title VII or the IHRA, Counts I, II, and III are dismissed.

### C. Claims based on the Rehabilitation Act and the Americans with Disabilities Act

Counts V and VI of the complaint allege violations of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Both acts prohibit government actors from discriminating against a qualified individual with a disability. 42 U.S.C. § 12101; 29 U.S.C. § 794. The ADA defines a qualified individual with a disability in three different places and states that the Act only applies to those individuals. 42 U.S.C. §§ 12102(2), 1211(8), 12131(2). Plaintiff relied on pregnancy as her disability to qualify for relief under the Rehabilitation Act and the ADA. This court has ruled, in accordance with the commentary to the Regulations, that "pregnancy itself is not a disability under the ADA."

*Chambers v. Wildman, Harold*, *Allen & Dixon*, No. 97 C 5715, 1997 WL 666507, at *3 (N.D. Ill. Oct. 23, 1997); *Leahr v. Metropolitan Pier & Exposition Auth.*, No. 96 C 1388, 1997 WL 414104, at 3 (N.D. Ill. Jul. 17,1997); Appendix to Part 1630 - Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. 1630.2(h), App. 1630.2(h) ("The definition of the term "impairment does not include ... pregnancy[.]").  Like the ADA, the Rehabilitation Act defines disability at the beginning of the statute and the provision prohibiting discrimination explicitly limits the protection to qualified individuals with a disability.  29 U.S.C. §§ 705(9), 794.  Despite admitting that she cannot state a claim under the ADA or the Rehabilitation Act,[3] plaintiff argues against dismissal and for "leave to amend Counts V and VI to include [a claim under] Title IX."[4]  (Compl. ¶¶ 71, 86; Resp. Mot. to Dismiss at 8-9.)

"[L]eave [to amend a complaint] shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."  *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).  Although it appears unlikely, we cannot say with certainty that Olojo could not state a claim under Title IX, thus she is entitled an opportunity to amend the complaint.  *See Barry Aviation Inc.*, 377 F.3d at 687.

### C.      Federal Constitutional Claims

---

[3] Olojo admitted in her response that her pregnancy "did not impair or substantially limit a major life activity, nor did it impair her ability to do her class work and to that extent, suffered no medical complications to constitute a disability under both the Rehabilitation Act and the ADA[.]"  (Resp. Mot. to Dismiss at 8.)

[4] Contrary to her assertions, plaintiff cannot state a claim under the Pregnancy Discrimination Act because she was not an employee of Kennedy-King College.  *See* Section A, *supra*.

Counts VII and VIII of the complaint allege violations of the Equal Protection Clause of the Fourteenth Amendment and the Free Exercise of Religion Clause of the First Amendment. Despite a liberal reading of the complaint, we cannot discern the basis for or the nature of plaintiff's equal protection claim. The Fourteenth Amendment of the Constitution guarantees "equal protection of the laws." U.S. Const. amend. XIV, § 1. Olojo's equal protection claim consists of the first ninety-one paragraphs of the complaint and allegations that Kennedy-King College is a state institution receiving public financial assistance, that plaintiff is a United States citizen, and that "the Defendant's action deprives Plaintiff of equal protection of the law." (Compl. ¶¶ 92-96.) It is unclear which "action" Olojo relies upon since the prior ninety-one paragraphs include a plethora of alleged wrongful acts. Rather than clarifying her claim in response to the instant motion, plaintiff merely argues that, as a pregnant woman, she is a member of a protected class entitled to the protections of the Fourteenth Amendment.[5] Alleging that one is part of a protected class is insufficient to state a claim for an equal protection violation. Plaintiff fails to indicate which law, regulation, ordinance, or policy unlawfully classifies on the basis of gender or pregnancy (whether on its face or in its application). After an exhaustive review of the complaint, we speculate that Olojo intended to base her equal protection claim on Kennedy-King College's alleged ratification of Professor Montgomery's

_____

[5] Our understanding of Olojo's position is based on a liberal interpretation of her response to the instant motion. For example, plaintiff argues that "[t]o the extent that gender discrimination is different and distinct from pregnancy discrimination, Plaintiff's Fourteenth Amendment claim is proper before this Court." (Resp. to Mot. to Dismiss at 10.) It appears that Olojo actually intended to argue the opposite contention i.e. that pregnancy discrimination rises to the level of gender discrimination for purposes of equal protection analysis.

discriminatory actions.[6]

In sum, Olojo alleges that Ms. Montgomery intentionally and vindictively treated her differently than similarly situated classmates for irrational, malicious, and discriminatory reasons.[7] Plaintiff does not allege that the other similarly situated students were outside of her protected class (either male, non-pregnant, or non-Christian), thus she likely seeks to allege a "class of one" equal protection claim.[8] Regardless, Kennedy-King College cannot be held vicariously liable for Ms. Montgomery's actions under 42 U.S.C. § 1983. *See Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978) ("We conclude, therefore, that a local government may not be sued under 1983 for an injury inflicted solely by its employees or agents."); *Baxter,* 26 F.3d at 734-35 (declaring that "[t]he Supreme Court has consistently ... barr[ed] *respondeat superior* liability on the part of a local

---

[6] According to the complaint, Ms. Montgomery provided a few students, including Olojo, the opportunity to increase their grades (so they could graduate) by participating in orientation for Nursing 101 students. (Compl. ¶¶ 32-33.) Olojo claims that Ms. Montgomery credited her peers' participation in the program, but refused to increase her grade. Plaintiff suggests that Ms. Montgomery refused to increase her grade in retaliation for expressing religious beliefs, including invoking the name "Jesus" and refusing to terminate her pregnancy, and for being pregnant. Kennedy-King College then allegedly failed to take any action once apprised of Ms. Montgomery's actions.

[7] Olojo also attempts to base her claim upon Ms. Montgomery's refusal to allow plaintiff to attend the HESI review. However, Olojo admits that the HESI review was only for graduating students and that she did not meet the graduation requirements.

[8] *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000); *Esmail v. Macrame, Jr.*, 53 F.3d 176, 178 (7th Cir. 1995); *Sims v. Mulcahy,* 902 F.2d 524, 538 (7th Cir. 1990) (stating a claim under the Fourteenth Amendment requires allegations of membership in a protected class, "that [plaintiff] is otherwise similarly situated to members of the unprotected class, and that [plaintiff] was treated differently from members of the unprotected class."); *Alcala v. Toatro,* No. 05 C 3683, 2005 WL 3470293, at *3 (N.D. Ill. Dec. 16, 2005) (quotation omitted) ("To state an equal protection claim based on a class of one, [plaintiff] must allege: (1) that [s]he has been intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant.").

governmental unit."); *Brandt v. Bd. of Educ. of City of Chicago*, No. 04 C 0904, 2006 WL 623651, at *12 (N.D. Ill. Mar. 13, 2006).

"Pursuant to 42 U.S.C. § 1983, individuals have a private right of action for violations of the Fourteenth Amendment." *Alcala*, 2005 WL 3470293, at *3. However, to state a claim for municipal liability under § 1983, Olojo must allege that "(1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that ... is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *Id.* at *5. The complaint does not allege the existence of a pertinent College policy or custom. Moreover, even if Olojo pointed to Kennedy-King College's ratification of Ms. Montgomery's actions (by its failure to take remedial action), the complaint is devoid of allegations that the individual with whom plaintiff spoke regarding the situation had final policymaking authority.[9] *See Baxter,* 26 F.3d at 735 (ruling that a plaintiff must "adequately [allege] that a defendant is a final policymaker."); *Mendoza v. Chicago Park Dist.*, No. 00 C 2825, 2002 WL 31155078, at *4 (N.D. Ill. Sep. 26, 2002) ("For policymaker liability to apply, it is necessary that the policymaker's act was in conformance with, or in the creation of, governmental rules that have the effect of law (and then the rule must violate the plaintiff's constitutional rights)."); *Suarez v. Illinois Valley Comm. College*, 688 F. Supp. 376, 383 (N.D. Ill. 1988) (quotation omitted) ("When government officials with final policymaking authority sanction or order an unconstitutional act, the act is one for which the municipality itself is

---

[9] The only paragraph directly imputing knowledge to defendant reads as follows: "That the Plaintiff reported the incident to the Defendant Kennedy-King College alleging religious and pregnancy discrimination by Ms. Montgomery but the Defendant failed and omitted to take any action[.]" (Compl. § 43.)

actually responsible.").  Similarly, the complaint is devoid of any allegations of a school policy, custom, or the involvement of a policymaking official in regards to the free exercise of religion claim.

Disregarding the § 1983 pleading deficiencies, Count VIII fails to state a claim for a violation of the Free Exercise Clause.  "[T]he Free Exercise Clause [] recognizes the value of religious training, teaching and observance and, more particularly, the right of every person to freely choose his own course with reference thereto, free of any compulsion from the state." *Sch. Dist. of Abington Township, Pennsylvania v. Schempp*, 374 U.S. 203, 222, 83 S. Ct. 1560, 1571 (1963).  Consequently, government actors are prohibited from exerting "any restraint on the free exercise of religion." *Id.* at 222-23.  To state a claim under the Free Exercise clause, plaintiffs "must show the coercive effect of the enactment [or government invasion] as it operates against [her] in the practice of [her] religion." *Id.* at 223; *see also Harless v. Darr*, 937 F. Supp. 1339, 1347 (S.D. Ind. 1996) ("A policy denying Bryan an unfettered right to distribute literature on school grounds is simply not the type of restraint proscribed by ... the Free Exercise Clause, and the Plaintiffs have failed to establish that the policy significantly curtails Bryan's belief in evangelism.").

Olojo's complaint alleges that "Defendant's actions significantly and impermissibly interfered with the free exercise of religious beliefs in violation of the [F]ree [E]xercise [C]lause of the First Amendment to the United States Constitution and are, therefore, unconstitutional." (Compl. ¶¶ 98.)  However, the facts plead in the complaint belie her conclusory allegations. Olojo claims that Professor Montgomery told plaintiff "not to ever mention the name of Jesus anytime she is engaged in a conversation with her." (*Id.* ¶ 18.)  Additionally, upon learning of

Olojo's pregnancy, Ms. Montgomery "asked the Plaintiff whether she liked her husband and whether she would like to use contraceptive [sic] to terminate the pregnancy." (*Id.* 24.) Olojo explained that her religious beliefs prevented her from terminating her pregnancy. (*Id.* 25.) Finally, Olojo recounts two instances where Professor Montgomery referenced "Jesus":[10] The complaint is devoid of any allegations that Professor Montgomery inhibited plaintiff's ability to practice her religion or took any coercive action or restrained her religious activity in a manner prohibited by the Constitution.

"[I]n response to a motion to dismiss that raises the issue, the plaintiff must identify the legal basis for a claim and make adequate legal arguments in support of it." *Bd. of Governors of Univ. of Illinois at Chicago Med. Sch.*, No. 01 C 9684, 2002 WL 959837, at *1 (N.D. Ill. May 9, 2002). Olojo defends the free exercise of religion claim by regurgitating the allegations in her complaint, quoting Federal Guidelines on religious discrimination in schools promulgated by the executive branch in the late 1990s,[11] and concluding that "[a]s can be seen, the Plaintiff has made a prima facie claim of religious discrimination in her Complaint as she had [sic] demonstrated a religiously restricted classroom environment, constant harassment and lack of accommodation for religious views and beliefs, which are hallmarks of [sic] Free Exercise Clause of the U.S[.] Constitution." (Resp. to Mot. to Dismiss at 12.) Contrary to plaintiff's conclusory statements, the complaint does not include allegations of a religiously restricted classroom, constant

---

[10] First, the teacher said "let's see how Jesus will deliver you from repeating this class." Second, while preventing Olojo from entering the HESI review for graduating students, Professor Montgomery "told the Plaintiff she wouldn't [let her in] whether or not the Plaintiff beg [sic] her in the name of Jesus[.]" (Compl. ¶¶ 19, 39.)

[11] Plaintiff's citation for the quoted materials directs us to the front page of the current edition of the Denver Post Online rather than a source for the quoted material in her brief. (See Resp. to Mot. to Dismiss at 11.)

harassment based on religion, or the restraint on religious beliefs or practices.  Therefore, Olojo failed to state a claim for municipal liability under either the Equal Protection Clause or the Free Exercise Clause.

### D.     State Common Law and Statutory Claims

The complaint lists two state tort claims: 1) intentional infliction of emotional distress (Count IV(a)) and 2) negligence (Count IV(b)).[12]  Defendants argue that the common law tort claims are preempted by the Illinois Human Rights Act ("IHRA") and that the state law tort claims are barred by Illinois' statute of limitations.  In response, Olojo inexplicably argues that the IHRA is invalid under preemption or conflict principles in accordance with the Supremacy Clause of the Federal Constitution.  As previously stated, "in response to a motion to dismiss that raises the issue, the plaintiff must identify the legal basis for a claim and make adequate legal arguments in support of it."  *Bd. of Governors of Univ. of Illinois at Chicago Med. Sch.*, 2002 WL 959837, at *1.  Olojo failed to directly respond to defendant's argument, identify a relevant justification for denying the instant motion, or proffer legal support for the sufficiency of the state tort claims.  Moreover, since we dismissed all federal claims, we agree with plaintiff that we should decline to exercise supplemental jurisdiction over the state law claims.  (Resp. to Mot. to Dismiss at 5-6.)  However, since we grant Olojo's request for leave to amend her complaint, we will address Counts IV(a) and IV(b) so as to prevent plaintiff from re-pleading unsupportable claims.

First, Olojo's state tort claims are time-barred.  We converted defendant's motion to

---

[12] Since Olojo included two Count V's in her complaint we will refer to the original Count IV as IV(a) and the first original Count V as IV(b).  (Compl. at ¶¶ 13-14.)

dismiss the state law tort claims based on the statute of limitations into a motion for summary judgment.[13] Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's *evidence* as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

In Illinois, civil actions against local public entities must be brought "within one year from the date that the injury was received or the cause of action accrued." Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 Ill. Comp. Stat. 10/8-101(a); *see Fanio v. John W. Breslin Co.*, 51 Ill.2d 366, 282 N.E.2d 443 (Ill. 1972) (upholding constitutionality of one-year statute of limitations). "The legislature, when enacting the Tort Immunity Act, specifically stated that its purpose was 'to protect local public entities and public employees from liability arising from the operation of government.'" *Tosado v. Miller*, 188 Ill.2d 186, 194, 720 N.E.2d 1075, 1080 (Ill. 1999) (quoting the Tort Immunity Act, 745 Ill. Comp. Stat. 10/101.1(a)). The Illinois Supreme Court further explained that the statute

---

[13] Defendant raised the statute of limitations defense in its reply to the motion to dismiss. Since plaintiffs do not generally have the right to respond to a party's reply brief, it is improper for a party to raise arguments for the first time in a reply. However, recognizing the importance of the statute of limitations issue, we converted the portion of defendant's motion to dismiss pertaining to the state law tort claims into a motion for summary judgment on April 17, 2006. As a result, we granted both parties leave to submit any supplemental materials, including affidavits or legal memoranda in support of their positions. Order April 17, 2006 (Docket No. 25.). Defendant filed an affidavit, a legal memorandum with exhibits, and a statement of undisputed facts. Plaintiff belatedly filed a legal brief with exhibits, but no affidavit or supporting evidence for the most pertinent facts.

of limitations encourages prompt investigation and resolution of disputes and affords

governments the opportunity to realistically plan their budgets.  *Id*. at 195; *Saragusa v. City of*

*Chicago,* 63 Ill.2d 288, 293, 348 N.E.2d 176, 179-80 (Ill. 1976).  Plaintiff's state law claims are

subject to the Tort Immunity Act because the statute applies to civil actions, including common

law, state statutory, and state constitutional claims.  745 Ill. Comp. Stat. 10/8-101(c).

Additionally, Kennedy King College qualifies as a local public entity entitled to the protections

of the Act.[14]

In her complaint, Olojo failed to specify when the alleged discrimination occurred, but

defendant averred that Kennedy King College's 2004 spring semester ended on May 8.  (Def.

Mem. in Support of Mot. for Summ. J. Ex.3.)  Plaintiff confirms that she "was denied graduating

with her colleagues" in May 2004.  (Supp. Resp. to Mot. for Summ. J. at 3.)  However, Olojo

filed her complaint on October 28, 2005.  Arguing that her complaint was timely filed, plaintiff

claims that the statute of limitations began to run in December 2004 or, in the alternative, that we

should apply the doctrine of equitable tolling to justify her tardy filing.  First, we are

unpersuaded that Olojo's injury accrued on December 2004 when the nursing students in the

class below her graduated.  While Olojo may have been in the process of grieving her situation

to officials at Kennedy-King College after May 2004, she was unable to graduate with her class

at that time and she was represented by counsel as early as August 16, 2004.  (See Supp. Resp. to

---

[14] *See* 745 Ill. Comp. Stat. 10/1-206 (defining local public entities as "municipalit[ies] ... school district[s], school board[s], educational service region[s], regional board of school trustees, trustees of schools of townships, treasurers of schools of townships, community college district[s], community college board[s] ... and all other local governmental bodies."); *Brugger v. Joseph Academy, Inc.,* 202 Ill.2d 435, 781 N.E.2d 269 (Ill. 2002); *see also Luciano v. Waubonsee Community College*, 245 Ill. App. 3d 1077, 1084, 614 N.E.2d 904, 908-09 (2d Dist. 1993) (finding that a community college "was properly determined to be a local public entity within the dictates of the Tort Immunity Act.").

Mot. for Summ. J. Ex. B, C.) Plaintiff was not required to file grievances with the college as a pre-requisite to filing her state tort claims. "[T]here is absolutely no authority for tolling a statute of limitations while a party takes unnecessary legal action, regardless of whether that action was taken in good faith." *See Hoosier Bancorp of Indiana v. Rasmussen*, 90 F.3d 180, 183 (7th Cir. 1996). In addition, filing a timely complaint in state court which is later voluntarily dismissed does not toll the statute of limitations. *Id.* at 184 ("[S]tatutes of limitations continue to run during the pendency of earlier actions that are later voluntarily dismissed."). The doctrine of equitable tolling does not "provide aid to those plaintiffs who fail to research the requirements of bringing a lawsuit." *Id.* at 183. There is no "mistake of counsel" exception to the statute of limitations.[15] *Id.* at 184. Moreover, assuming *arguendo* that equitable tolling applied, Olojo's claim would still fail under Rule 12(b)(6) because the intentional infliction of emotional distress and negligence claims are preempted by the IHRA.

The Illinois legislature "intended the [IHRA], with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations." *Mein v. Masonite Corp.*, 109 Ill.2d 1, 6, 485 N.E.2d 312, 315 (Ill. 1985). Chief Judge Kocoras of the Northern District of Illinois recently reiterated the scope of the IHRA in *Hubbard v. Dollar Tree Stores, Inc.*, No. 04 C 0012, 2005 WL 589005, at *5-6 (N.D. Ill. Mar. 9, 2005): "The IHRA confines claims of civil rights violations under Illinois law to proceedings under the IHRA."

The IHRA prohibits 1) sexual harassment in higher education, 2) "any institution of

---

[15] Olojo submitted no supporting evidence, such as an affidavit, for the allegation that a state court clerk misled plaintiff's counsel and prevented him from applying for admission to Illinois state court *pro hac vice*. (*See* Resp. to Mot. for Summ. J. at 3-6.)

higher education to fail to take remedial action, or to fail to take appropriate disciplinary action against a higher education [employee] ... when such institution knows that such higher education representative was committing or engaging in ... sexual harassment[,]" 3) discrimination on the basis of religion, sex, or marital status, and 4) retaliation for a higher education student's opposition to unlawful discrimination or sexual harassment. 775 Ill. Comp. Stat. 5/1-102, 5A-102, 6-101. Olojo's intentional infliction of emotional distress and negligence claims are based on the same factual predicates as her IHRA discrimination, harassment, and retaliation claims. Where the allegations for a state tort claim are inextricably linked to the IHRA claims, the IHRA preempts the state tort claims. *See Hubbard*, 2005 WL 5890005, at *5-6. In *Hubbard*, the court granted a motion for summary judgment on plaintiff's intentional infliction of emotional distress claims because the plaintiff "relied upon the same factual basis to substantiate her [IHRA] claim and her [state tort] claim." *Id.* at *6. Like the claims in *Hubbard*, Olojo's intentional infliction of emotional distress and negligence claims "are premised upon the fact that the actions of which she complains violate" her civil rights. *Id.* Plaintiff did not establish or properly allege "the necessary elements of [either] ... tort independent of any legal duties created by the Illinois Human Rights Act." *See Maksimovic v. Tsogalis*, 177 Ill.2d 511, 519, 687 N.E.2d 21, 24 (Ill. 1997). Therefore, the state tort claims are preempted by the IHRA.

### E. Sanctions

Under Rule 11, an attorney's signature on a document filed with this Court signifies that the signer has read the "pleading [or] motion ... [and] that to the best of the person's knowledge, information, and belief, formed after a[ reasonable inquiry,] the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the

extension, modification or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). We can impose sanctions *sua sponte* for failure to comply with Rule 11(b) against attorneys or parties. Fed. R. Civ. P. 11(c); *see also Schmitt v. Schmitt*, 165 F. Supp. 2d 789, 796-797 (N.D. Ill. 2001). These sanctions must be limited to "what is sufficient to deter repetition of such conduct." Fed. R. Civ. P. 11(c)(2). We find that plaintiff's counsel, Kayode Oladele, continuously disregarded Local Rule ("L.R.") 83.15, violated the Rules of Professional Conduct, and filed claims and argued defenses that have no basis in the law and could not reasonably be characterized as a "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b); *see also* L.R. 83.50.1, 83.53.1, 83.58.4.

Oladele filed a complaint on behalf of Badejoko Olojo replete with frivolous or non-tenable claims. For example, Count I through III of the complaint are claims for religious discrimination, pregnancy discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act ("IHRA"). However, a plain reading of the statute, entitled "Equal Employment Opportunity," reveals that Title VII applies to employment-related claims. The complaint clearly specifies that plaintiff was merely a student. In addition, Olojo failed to exhaust her administrative remedies by filing a complaint with the EEOC, a prerequisite to stating a claim under Title VII. Moreover, plaintiff neglected to file a charge with (let alone get a final order from) the HRC, a prerequisite to bringing a claim under the IHRA. Rather than competently responding to the dispositive case law in defendant's motion to dismiss that claim for failure to exhaust the administrative remedies, counsel inexplicably argued that the IHRA claims are properly before us under the doctrine of

supplemental jurisdiction, which, according to Oladele, allows us to adjudicate claims that are jurisdictionally defective.  (Resp. to Mot. to Dismiss at 5-6.); *see Flaherty v. Gas Research Institute,* 31 F.3d 451, 458-59 (7th Cir. 1994) (affirming the imposition of sanctions for filing an IHRA claim without obtaining a final order from the HRC).

Counsel also neglected to conduct a modicum of research into Counts V and VI, claims for violations of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA").  The complaint alleges that Olojo's status of being pregnant qualifies her as "disabled" under both Acts.  It is well established by the plain language of the statutes, the regulations, and authority in our circuit that being pregnant is not a "disability" as contemplated by the Rehabilitation Act or the ADA.  Moreover, in the response to the motion to dismiss, counsel admits the frivolity of the claims by conceding that plaintiff's "pregnancy did not impair or substantially limit a major life activity, nor did it impair her ability to do her class work and to that extent, suffered no medical complications to constitute a disability under both [Acts.]" (Resp. to Mot. to Dismiss at 8.)

Further, Oladele demonstrated contempt for this court by disregarding our local rules and the Rules of Professional Conduct. Pursuant to Local Rules 37.1(a), 83.25(a)(4), and 83.28, we can either issue a complaint with the Chief Judge listing the instances of counsel's misconduct for the Executive Committee to review or enter an order of contempt with appropriate damages. Counsel could be subject to discipline for violating Local Rules 3.3(a),(e),  83.15, 83.51.1, 83.53.1, and 83.58.4.

Oladele, who practices law in Michigan, filed a complaint in the Northern District of Illinois on October 28, 2005 without designating local counsel in accordance with Local Rule

83.15.  On November 15, 2005, the court sent counsel a letter notifying him of this requirement.

Oladele was subsequently reminded by defendant Kennedy-King College and the deputy clerk

on at least three occasions that he was required to comply with local rule 83.15.  Thus far,

counsel has filed a complaint, a response to the motion to dismiss, and a supplemental response

to the motion for summary judgment without designating local counsel.

In addition, Oladele failed to timely pay the filing fee for his complaint.  *See* L.R.

3.3(a),(e).  The check submitted with the complaint was returned to the court for insufficient

funds.  On February 28, 2006, the fiscal department sent counsel a letter documenting that they

"previously requested payment in various phone calls with no response from [Oladele]."  (*See*

Docket No. 23.)  The letter informed counsel that he was required to pay the filing fee within

five days.  *Id.*  While Oladele requested and received a waiver of the five day period because he

was out of town, he did not pay the filing fee until April 5, long after the grace period.  (*See*

Docket No. 24.)

Moreover, counsel's pleading and responses to the motions indicate violations of the

Rules of Professional Conduct for the same reasons addressed in the Rule 11 discussion above.

Local Rules 83.51.1, 83.53.1, and 83.58.4 require attorneys to provide competent representation

and to restrict their filings to meritorious claims or contentions, meaning that they cannot

advance an argument if there is no "basis for doing so that is not frivolous, which includes a

good-faith argument for an extension, modification, or reversal of existing law."  L.R. 83.53.1.

Oladele is hereby ordered to show cause why he should not be assessed sanctions under

Rule 11(b)(2), found in contempt, or referred to the Chief Judge for disciplinary proceedings.

## CONCLUSION

For the reasons described above, we dismiss Counts I, II, III, IV(a), IV(b), V, and VI with prejudice.  Counts VII and VIII are dismissed without prejudice.  We grant plaintiff leave to file an amended complaint within fourteen days of the entry of this order to add a Title IX claim and, if she can, properly plead violations of the Fourteenth Amendment and the First Amendment of the Constitution.[16]  Finally, Oladele, should respond to this cause order on or before June 20, 2006.  Defendant Kennedy-King College should reply on or before July 5.  Oladele may respond further if he so chooses on or before July 12.  The status hearing is set for August 1.  It is so ordered.


MARVIN E. ASPEN
United States District Judge


Dated: June 7, 2006


---

[16] We caution plaintiff that any further pleading must comply with Rule 11 and Local Rules 3.3(a) and 85.15.